## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

James D. Sudberry,
    Petitioner

    vs

                      Case No. 1:03cv537
                      (Beckwith, C.J.; Hogan, M.J.)

Edwin C. Voorhies, Jr.,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Southern Ohio Correctional Facility in Lucasville, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 25, 2004, the case was administratively stayed and terminated on the Court's active docket pending petitioner's exhaustion of "possibly available state remedies with respect to the ineffective assistance of counsel claims alleged in grounds one and nine" of the petition. (Docs. 14-15; *see also* Doc. 8). On January 3, 2007, the case was reinstated on the Court's active docket, and respondent was ordered to file a return of writ responding to petitioner's allegations within forty days. (Doc. 35). On May 15, 2007, the undersigned issued a further Order granting in part petitioner's motions for discovery and ordering respondent to file a supplemental return of writ. (*See* Docs. 39, 40, 42).

It now appears that the matter is ripe for review. Currently pending before the Court for consideration are the petition (Doc. 1); respondent's return of writ with exhibits, including the transcript of the state criminal trial proceeding, which was filed on February 9, 2007 (Doc. 37); respondent's supplemental memorandum filed February 13, 2007, with a redacted exhibit (Doc. 38); respondent's supplemental return of writ filed in accordance with the Court's Order of May 15, 2007 (Doc. 45); and petitioner's replies to the return of writ and supplemental return of writ (Docs. 48, 50).[1]

---

[1]Petitioner also recently filed a motion requesting that an Order of Judgment be entered in this case. (Doc. 51). That motion is addressed in a separate Order issued this date.

## Factual And Procedural Background

In the instant matter, petitioner challenges his October 31, 2000 murder conviction and resulting prison sentence of fifteen (15) years to life following a jury trial in the Butler County, Ohio, Court of Common Pleas.[2] (*See* Doc. 1, p. 2; Doc. 37, Exs. 1-3). The facts giving rise to petitioner's conviction and sentence, as summarized by the Ohio Court of Appeals, Twelfth Appellate District, in its direct appeal decision, are as follows:[3]

> Appellant lived at a house in Hamilton, Ohio, with his grandmother, Ora Lee Nassar, and her husband ("the Nassars"). In early January 1999, the Nassars moved out of the house and the landlord began eviction proceedings. Appellant continued to stay in the house and at some point, his uncle, James L. Sudberry ("Boo") also began staying in the house. Appellant testified that Boo was abusive, calling him names like "fag," and doing things such as stealing appellant's food and not allowing appellant to use his own telephone. Appellant also stated that he was afraid of Boo because in the past Boo told appellant he would kill him and threatened to "beat the gay out of him."
>
> On January 25, 1999, the landlord came to the house and told appellant to move out by morning and took his house key. Boo was not home at the time. According to appellant, he was outside when Boo returned, and Boo became angry when he could not get into the house and began demanding a key. Boo threatened to hit appellant with a beer bottle and yelled that he would kill appellant and "kick his ass." He began bumping and pushing appellant, calling him a "big fag." According to appellant, Boo was kicking

---

[2] It appears from the record that petitioner also was separately indicted and convicted in the Butler County Common Pleas Court for assaulting a police officer; petitioner was sentenced on October 31, 2000 to a seventeen-month term of imprisonment to be served concurrently with the sentence imposed on the murder charge. (*See* Doc. 37, Exs. 11-12). Petitioner does not challenge that conviction or sentence in this action. (*See* Doc. 1).

[3] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Pursuant to this provision, the Ohio Court of Appeals' factual findings quoted herein are presumed correct absent petitioner's presentation of "clear and convincing evidence" to the contrary.

and punching him as he was trying to walk away.

Appellant claimed that he pulled out a pair of scissors he had in his pocket to keep Boo from harming him. Appellant stated that he poked Boo with the scissors only a few times and that Boo was throwing himself against the scissors, still trying to harm appellant. Eventually, Boo quit coming after appellant and walked back towards the house. Appellant claimed that he decided to go to a homeless shelter for the night and returned to the house to get his identification card. When he returned, he saw Boo lying on the ground. As he tried to step around or over Boo to get into the house, Boo tried to grab him. Appellant then hit Boo with a shovel several times and killed him.

Later in the evening, appellant went into the backyard and covered Boo's body with an orange blanket and some other items. The next day he dragged the body to the garage and hid it in front of a car. Appellant claims that he then went to Dayton to try and find an African-American attorney to help him. A few days later he was stopped by the Dayton police who discovered an outstanding warrant in Butler County for the murder and arrested him.

Appellant was indicted for murder and a jury trial began on October 2, 2000. Appellant presented affirmative defenses of insanity and self-defense. On October 7, 2000, the jury returned a guilty verdict. . . .

(Doc. 37, Ex. 7, pp. 1-3).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, Twelfth Appellate District, raising two assignments of error:

1. The jury erred in rejecting the defense of not guilty by reason of insanity.

2. The court's verdict of guilty was against the manifest weight of the evidence.

(*Id.,* Ex. 5). On November 13, 2001, the Court of Appeals overruled these claims of error and affirmed the trial court's judgment. (*Id.,* Ex. 7).

3

Petitioner did not timely appeal to the Ohio Supreme Court. Instead, petitioner filed a *pro se* notice of delayed appeal, which was first "received" by the Clerk of Court on April 8, 2002 and ultimately "filed" on June 21, 2002. (*Id.,* Ex. 8). As "good cause" for his delay in filing, petitioner claimed as follows in an attached affidavit:

> I was unable to file an appeal & memorandum in support of jurisdiction within the 45 day minimum for the following reasons. First, I have a mental illness (schizoaffective/bi-polar). I regressed in my mental illness & had to be transported to Oakwood Correctional Facility for treatment. Once there at Oakwood I did not have complete access to the law library because of complications with my mental illness. Next I was in search for a lawyer and I had incompetency of the law & understanding of the law. Meaning that after I became well, it was well over the 45 day minimum period.

(*See id.,* "Affidavit In Support").

On July 23, 2002, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the case without opinion. (*Id.,* Ex. 9).

Petitioner next commenced the instant habeas corpus action in 2003.[4] In the petition, petitioner essentially alleges four claims in nine grounds for relief:

> 1. In Grounds "(A)" and "(B)" of the petition, petitioner challenges his trial counsel's decision to proceed to trial after conferring with petitioner's family, rather than to pursue a plea bargain requested by petitioner. Specifically, petitioner claims in Ground "(A)" that his "[c]onviction obtained by plea of [not] guilty [by reason of insanity (NGRI)] . . . was unlawfully induced . . . without understanding of the nature of the charge & consequences of the plea." In Ground "(B)," petitioner further contends that

---

[4]As discussed in a prior Report and Recommendation (*see* Doc. 8, p. 4), the petition was signed by petitioner on March 27, 2003, was initially "received" for filing by the Clerk in Columbus, Ohio on May 19, 2003, and was stamped by the Clerk in Cincinnati as "received" on May 20, 2003, and as "filed" on July 28, 2003. Because under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date for a federal habeas petition is the date on which the *pro se* prisoner provides his papers to prison authorities for mailing, it was assumed, absent evidence to the contrary, that the instant petition was "filed" on March 27, 2003, the date petitioner signed it. (*See* Doc. 8, pp. 4-5).

4

his conviction was obtained "by coerced confusion" stemming from his "schizoaffective/bi-polar disorder" when he "just wanted to plea bargain."

2. In Grounds "(C)" and "(H)" of the petition, petitioner claims that the grand and petit juries were "unconstitutionally selected or impaneled." It appears that petitioner is challenging the grand jury's selection because he was not allowed to be present during the grand jury proceedings and, in his absence, the grand jury was able "to stereotype [him] as a common criminal or thug." Petitioner challenges the petit jury's selection because "there were no African-Americans on the jury to relate to [his] cultural perspective," he had no input in the selection process, and "there was some ethnic intimidation dealing with a perc[ei]ved homosexuality."

3. In Grounds "(D)" and "(I)" of the petition, petitioner alleges that his trial counsel was ineffective because he failed to "follow through on negotiations to [obtain a] 5-8 year plea bargain" for petitioner; he "induced/coerced [petitioner] into a not guilty plea of NGRI or self-defense;" and he did not consult with petitioner and had petitioner "docketed as incomp[e]tent to stand trial."

4. In Grounds "(E)," "(F)" and "(G)" of the petition, petitioner essentially alleges the evidence was insufficient to support his murder conviction due to certain mitigating circumstances that "create[d] the initial event of the crime scene," which showed he lacked the requisite intent to kill his uncle. Petitioner argues that the evidence establishes he was mentally unstable at the time of the incident and only acted in self-defense in response to his uncle's attack on him.

(Doc. 1, pp. 5-6 & attached pp. I-XII).

On September 29, 2003, respondent filed a motion to dismiss the petition on the ground that it is time-barred, and alternatively, on the ground that petitioner has waived his claims for relief due to his procedural defaults in the state courts. (*See* Doc. 5). On February 20, 2004, the undersigned magistrate judge issued a Report and Recommendation, which was adopted in an Order and Judgment entered May 25, 2004, to deny the motion to dismiss on statute of limitations grounds, and to stay the action so that petitioner could exhaust the possibly available state post-conviction remedy with respect to his ineffective assistance of trial counsel claims "that may be based on evidence

outside the record." (Doc. 8; *see also* Docs. 14, 15).

Apparently in response to the February 20, 2004 Report and Recommendation, petitioner filed a *pro se* petition for post-conviction relief in the Butler County Common Pleas Court on April 19, 2004. (Doc. 34, Exs. A-B). Petitioner claimed in the petition that his trial counsel was ineffective because (1) he "did not listen to my initial request of asking for a 5-8 year plea bargain" and instead "induced/coerced me into a not guilty plea of NGRI or self defense," (2) he "did not consult with me and had me docketed as incomp[e]tent to stand trial;" and (3) he did not "follow through" to obtain petitioner's response to a 5-8 year plea bargain offered by the prosecution five days before trial. (*See id.,* Ex. B).[5]

Beginning in April 2004, petitioner also filed a series of motions under Ohio R. App. P. 26 with the Ohio Court of Appeals, Twelfth Appellate District, for reconsideration or reopening of his appeal. (*See* Doc. 37, Exs. 15, 17, 19). The Ohio Court of Appeals denied each of these motions as untimely-filed; petitioner apparently did not seek further review of these decisions by the Ohio Supreme Court. (*See id.,* Brief, pp. 4-6 & Exs. 16, 18, 20). In denying petitioner's initial application for reconsideration or reopening, the Ohio Court of Appeals specifically rejected petitioner's attempt "to establish good cause" for his over-two-year delay in filing "by attributing the delay to the fact that since incarcerated, he has been in the residential psychiatric treatment unit of his correctional facility and under medication." (*Id.,* Ex. 16, p. 4). The court reasoned: "There is nothing to substantiate appellant's allegations regarding his condition, its severity or duration, or why his condition prevented him from filing his application during the last two years." (*Id.*).[6]

In July 2006, petitioner filed a "Reply" to the February 20, 2004 Report and

---

[5]Some of the pages of the post-conviction petition are missing from the copy of the pleading submitted as Exhibit B to Doc. 34. However, the Court was able to review the missing pages by accessing the Butler County Clerk's computerized docket records that are available on the internet.

[6]In ruling on petitioner's subsequent applications for reconsideration or reopening, the Ohio Court of Appeals not only relied on the untimeliness of the filings, but also on the fact that Ohio R. App. 26(B) "makes no provision for filing successive applications to reopen," and in any event, "an applicant is barred by res judicata from arguing that good cause existed for failure to file a timely application, where the court of appeals denied the first application to reopen based upon a finding of no good cause for an untimely filing, and no appeal was made of that decision." (*See* Doc. 37, Exs. 18, 20).

6

Recommendation, essentially seeking to reinstate the instant action, which had been stayed and terminated on the Court's active docket. (*See* Doc. 29). On January 3, 2007, the case was reopened, based on the Court's determination that the exhaustion requirement should be excused due to the Butler County Common Pleas Court's "inordinate delay" in ruling on petitioner's post-conviction petition, which by that time had been pending for "well over two and one-half years." (Doc. 35).

In February 2007, respondent filed a return of writ, which was subsequently supplemented, responding to the allegations contained in petitioner's federal habeas petition. (*See* Docs. 37, 38). Thereafter, petitioner filed motions for discovery, which were granted in part on May 15, 2007 to the extent "that the record has not been sufficiently developed with respect to one of petitioner's ineffective assistance of counsel claims, alleged in both the instant petition and in his pending state post-conviction petition, which possibly could give rise to a colorable ground for relief." (Docs. 39, 40; *see also* Doc. 42, pp. 2-3). The Court explained:

> Specifically, petitioner has alleged facts indicating that his counsel never gave him an opportunity to respond to a plea offer made by the prosecutor five days before trial, which included an agreement to a five (5) to eight (8) year sentence in exchange for petitioner's guilty plea. (*See* Doc. 1, attached pp. IV-V). Petitioner has indicated that he would have accepted the plea bargain, but that his counsel "never showed up" to obtain his response prior to the first day of trial; petitioner further alleges that by that time, he thought it was "too late to accept the plea bargain," which was not mentioned again by his counsel. (*See id.*).

(Doc. 42, p. 3).

The Court, therefore, ordered respondent "to file a supplemental return of writ ... responding or otherwise relating to petitioner's allegations that the parties were involved in plea negotiations, which included a plea offer by the State agreeing to a five (5) to eight (8) year sentence in exchange for petitioner's guilty plea." (*Id.*). The Court also ordered petitioner's trial counsel, Ronald Morgan, Esq., to "submit an affidavit . . . responding to petitioner's allegations regarding his purported failure to 'follow through' on the prosecutor's offer of a '5-8 year plea bargain.'" (*Id.*).

On June 14, 2007, respondent filed a supplemental return of writ as ordered by the Court, responding to the ineffective assistance of trial counsel claim that had not been

"sufficiently developed" in the state courts. (Doc. 45). However, respondent's counsel was unsuccessful in his attempts to locate petitioner's trial attorney, and therefore, was unable to submit an affidavit from counsel responding to petitioner's allegations as additionally required by the May 15, 2007 Order. (*See id.,* pp. 4-5).[7]

It appears that on July 20, 2007, over six months after the instant case was reinstated and over a month after the supplemental return of writ was filed by respondent, the Common Pleas Court finally denied petitioner's state post-conviction petition alleging ineffective assistance of trial counsel claims, because the petition was "not timely filed."[8]

## OPINION

### A. Petitioner Has Waived His Second And Fourth Claims For Relief, Which Are Alleged In Grounds "(C)," And "(E)" Through "(H)" Of The Petition

In the return of writ, respondent contends that petitioner has waived his claims for habeas corpus relief because he procedurally defaulted the claims in the state courts. (Doc. 37, pp. 10-18).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S.

---

[7]It is further noted that the copy of the May 15, 2007 Order mailed from this Court to petitioner's trial counsel was returned as "undeliverable." (*See* Doc. 43). According to the Court's docket records, a clerk's office employee contacted the attorney's "last listed telephone number to get forwarding address, but attorney's current mailing address at this date [is] unknown." (*Id.*).

[8]This relatively recent decision by the Butler County Common Pleas Court was discovered upon review of the Butler County Clerk's computerized docket records, which are accessible on the internet. It further appears on review of these records that petitioner filed another post-conviction petition with the trial court on July 16, 2007. The petition appears to be a copy of at least a portion of petitioner's motion for discovery, which is docketed as Doc. 40 in the instant case. On July 26, 2007, the State filed a memorandum opposing the petition on the ground that it is untimely.

4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default with respect to his second claim for relief, as alleged in Grounds "(C)" and "(H)" of the petition, because he never raised any claim challenging the selection of the grand and petit juries in the state courts. In addition, as respondent has argued, petitioner procedurally defaulted his fourth claim for relief, as alleged in Grounds "(E)" through "(G)" of the petition, because to the extent he raised this claim on direct appeal to the Ohio Court of Appeals, he did not timely appeal the Ohio Court of Appeals' direct appeal decision to the Ohio Supreme Court. Although months later, petitioner unsuccessfully sought a delayed appeal in the Ohio Supreme Court, the Sixth Circuit has held in an analogous case that the state supreme court's unexplained entry denying a motion for delayed appeal "constitutes a[n adequate and independent state] procedural ruling sufficient to bar federal court review of [the] habeas corpus petition." *Bonilla v. Hurley,* 370 F.3d 494, 497(6th Cir.) (per curiam), *cert. denied,* 543 U.S. 989 (2004); *see generally Harris,* 489 U.S. at 260-62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that

the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).

As the Sixth Circuit stated in *Bonilla,* "[w]hen a 'state prisoner has defaulted his federal claims in state court pursuant to [such] an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not demonstrated a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered, or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. Although petitioner has alleged the evidence is insufficient to support his murder conviction, establishing actual innocence requires a showing of factual innocence, not mere legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999).

Petitioner also has failed to establish "cause" for his procedural defaults in the state courts. Petitioner has not provided any explanation for his failure to bring his second claim challenging the selection of the grand and petit juries to the state courts' attention.

With respect to his fourth claim alleged in Grounds "(E)" through "(G)" of the petition, petitioner did argue as "cause" for his failure to perfect a timely appeal to the Ohio Supreme Court that during the 45-day appeal period, he "regressed in his mental illness" and had to be transported to a correctional treatment facility, where he "did not have complete access to the law library because of complications with [his] mental illness." (Doc. 37, Ex. 8, "Affidavit In Support"). In denying petitioner's motion for delayed appeal without opinion, the state supreme court apparently considered this argument inadequate to establish "good cause" for petitioner's delay in filing. When rejecting a similar argument asserted as "cause" for petitioner's delay in filing an application for reconsideration and reopening of his appeal, the Ohio Court of Appeals reasoned that petitioner had failed to substantiate his allegations with evidence pertaining to the "severity and duration" of his mental illness and "why his condition prevented him from filing his application" within the relevant time period. (*See id.,* Ex. 16, p. 4).

This Court agrees with the state courts' assessment of the issue. "[I]n order for

mental illness to constitute cause ... to excuse a procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued ... relief" in state court. *Gibson v. Wolfe,* No. 2:04-cv-272, 2006 WL 1321023, at *1-2 (S.D. Ohio May 15, 2006) (Graham, J.) (unpublished) (citing *Holt v. Bowersox,* 191 F.3d 970, 974 (8th Cir. 1999)).[9] Petitioner's unsubstantiated and conclusory allegations regarding his mental condition during the 45-day appeal period fail to meet that standard.

The mere fact that petitioner may have generally "regressed in his mental illness" and was incarcerated at a correctional treatment facility during the relevant time period "does not establish [his] mental condition or describe his capacity to comply with [the] procedural requirements" for perfecting a timely appeal to the Ohio Supreme Court or to otherwise make rational decisions regarding his case. *See Farabee v. Johnson,* 129 Fed.Appx. 799, 802-03 (4th Cir. Apr. 22, 2005) (not published in Federal Reporter); *cf. Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir. 1995) (stating that "[m]ental illness and legal incompetence are not identical, nor are all mentally ill people legally incompetent"). Petitioner's vague references to "complications with his mental illness" and to the lack of "complete access to the law library" also are insufficient to conclusively show that petitioner was impeded in his ability to pursue a timely appeal to the Ohio Supreme Court. *Cf. Gibson, supra,* 2006 WL 1321023, at *2 (petitioner failed to establish "cause" for his procedural default in the state court based on his "bare allegation that he was unable to concentrate sufficiently due to depression to pursue state court action at the time at issue"). In any event, as respondent has argued, petitioner has not provided any explanation as to why he waited until months after he was returned to "his normal prison" on January 16, 2002 to file for a delayed appeal in the Ohio Supreme Court. (*See* Doc. 37, Brief, p. 16; Doc. 38, Ex. 22).

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas

---

[9]*But cf. Harris v. McAdory,* 334 F.3d 665, 668-69 (7th Cir. 2003) (citing a number of "instructive" federal circuit court cases involving depression, borderline mental retardation, a diagnosis as a "borderline mental defective," below-average intelligence, youth, lack of education and illiteracy, the Seventh Circuit has opined that mental illness, which "comes from a source within the petitioner," may not constitute cause for a procedural default because it fails "to qualify as an external impediment" to the defense within the meaning of *Murray,* 477 U.S. at 488, wherein the Supreme Court defined cause sufficient to excuse a procedural default as "some objective factor external to the defense" which precludes the petitioner's ability to pursue his claim in state court), *cert. denied,* 541 U.S. 992 (2004).

corpus relief based on his second and fourth claims of error, which are alleged in Grounds "(C)" and "(E)" through "(H)" of the petition, because he waived these claims due to his procedural defaults in the state courts.

## B. All But One Of The Ineffective Assistance Of Trial Counsel Claims Alleged In Grounds "(A)," "(B)," "(D)" And "(I)" Of The Petition, Which Are Denoted Herein As Petitioner's First And Third Claims For Relief, Lack Merit

In his first and third claims for relief, which are alleged as Grounds "(A)," "(B)," "(D)" and "(I)" in the petition, petitioner contends that his trial counsel committed a number of errors amounting to ineffective assistance in violation of the Sixth Amendment.

The state courts have never addressed the merits of these claims, some of which were raised in the post-conviction petition that was pending for over three years in the Butler County Common Pleas Court. Ultimately, on July 20, 2007, the trial court dismissed the post-conviction petition on procedural timeliness grounds. However, by that time, the exhaustion requirement had been excused and the instant case reopened due to the "inordinate delay" of the trial court in ruling on the post-conviction petition.

Because the Court thus has waived the exhaustion requirement in this case, the undersigned is precluded by a prior decision issued by the District Court in an analogous case from finding at this juncture that the ineffective assistance counsel claims asserted in petitioner's state post-conviction petition are procedurally defaulted. *See Doan v. Voorhies,* No. 1:00cv727, 2007 WL 894559, at *3 (S.D. Ohio Mar. 21, 2007) (Beckwith, C.J.) (unpublished) (citing *Turner v. Bagley,* 401 F.3d 718 (6th Cir. 2005), and sustaining objections to Report and Recommendation which argued that deference should be accorded the state courts' findings of fact in a decision entered after the Court had excused the exhaustion requirement); *cf. Anderson v. McBride,* No. 2:05cv1089, 2006 WL 2468284, at *5-7 (S.D. Ohio Aug. 24, 2006) (Marbley, J.; Kemp, M.J.) (unpublished) (in excusing exhaustion and refusing to stay a petition with respect to a claim that was still pending before the state trial court a year and a half later, the court opined that because "the state courts have failed to enforce state procedural rules barring presentation of petitioner's claims in post conviction proceedings," the federal habeas court "likewise,

12

cannot enforce any procedural default of such claims").[10]  Therefore, the Court will proceed to review de novo the merits of petitioner's ineffective assistance of trial counsel claims that were presented in his state petition for post-conviction relief.[11]

To establish a claim of ineffective assistance of counsel, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the trial would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the trial's outcome would "reasonably likely have been different absent the errors." *See id.* at 695.

---

[10]*But cf. Hess v. Eberlin,* No. 2:04cv1144, 2006 WL 1064056, at * (S.D. Ohio Apr. 20, 2006) (unpublished) (Marbley, J.; Abel, M.J.) (wherein the court excused the exhaustion requirement and refused to stay or dismiss the petition while "awaiting a decision from the state court on petitioner's petition for post conviction relief,"which had been pending for over three years; the court further held, however, that the unexhausted claim asserted in the pending state post-conviction petition was waived because it should have raised on direct appeal and was thus barred from post-conviction review under Ohio's *res judicata* doctrine).

[11]The Court will entertain only those ineffective assistance of counsel claims that were raised by petitioner in his state post-conviction petition.  Petitioner has waived any other ineffective assistance of counsel claims based on his procedural defaults of either (1) never presenting them to the state courts for consideration, or (2) failing to raise them in timely-filed applications for reconsideration or reopening, and failing to appeal the Ohio Court of Appeals' denials of petitioner's untimely applications to the Ohio Supreme Court. *See supra* pp. 8-9.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether the petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing under either prong of the test. *See id.* at 697.

As alleged in his state post-conviction petition, petitioner contends that his trial counsel was constitutionally ineffective because counsel "first routed my case and induced/coerced me into a not guilty plea of NGRI or self defense [and] further did not consult with me and had me docketed as incomp[e]tent to stand trial." (Doc. 34, Ex. B). In addition, petitioner claims that defense counsel did not follow up with him to obtain his response to a 5-8 year plea bargain allegedly offered by the State five days before trial. *(Id.)*.

Petitioner has raised a colorable claim, addressed separately below, *see infra* pp. 17-22, that his trial attorney was ineffective in failing to follow up with him about a plea bargain offered by the State before trial. However, all other claims challenging petitioner's trial counsel's performance should be denied with prejudice as lacking in merit.

First, petitioner is unable to prevail on any claim that his counsel was ineffective in failing to consult with him and instead having him docketed as incompetent to stand trial. Dr. Bobbie Hopes, the forensic psychologist who evaluated petitioner regarding his competency to stand trial in May 1999, testified at trial that petitioner's mental illness at that time was such that he in fact was incompetent to stand trial, or in other words, "was not capable of understanding the nature or purposes of Court proceedings[,] . . . was unable to work with his attorney in a reasonable, rational manner[,] [a]nd . . . had no appreciation for how serious this situation was." (Doc. 37, Ex. 24, Tr. 897-900, 906). Dr. Hopes also stated that soon after petitioner's arrest for his uncle's homicide, the "first entry from the[] mental health staff" at the Butler County Jail on February 19, 1999 showed that petitioner "was clearly delusional at that point and hallucinating." *(Id.,* Tr. 906). Moreover, although petitioner was sent to a minimum security forensic center after he was ultimately found by the court to be incompetent to stand trial, the staff there was unable to "handle his kind of flamboyant behavior," and he was transferred to a maximum security psychiatric unit. *(See id.,* Tr. 908-09).

It is thus clear from the record that in 1999, petitioner was unable to work or consult with an attorney about his case, and in fact was evaluated and found to be

14

incompetent to stand trial. Therefore, petitioner's counsel acted reasonably in advocating that petitioner's competency be assessed. Indeed, if counsel had not done so, he would have been remiss in his duty of ensuring that his client would receive a fair trial.

Second, petitioner is unable to prevail on any claim that his counsel was ineffective in pursuing the defense theories of not-guilty-by-reason-of-insanity (NGRI) and self-defense at trial.

It was reasonable for counsel to assert a NGRI defense given petitioner's long history of mental illness, and evidence indicating that his condition was deteriorating, his behavior becoming more and more "aggressive" and "erratic," just prior to the incident resulting in his uncle's death. (*See* Doc. 37, Ex. 24, Tr. 847, 922-23). Indeed, the defense and State expert witnesses all agreed that petitioner was (or, at least, may have been) mentally ill at the time of the offense. (*See id.*, Tr. 854, 922-23, 959-60). Defense counsel also was able to obtain the services of Dr. Robert Fisher, an experienced clinical psychologist who previously had served as Executive Director for Forensic Psychiatry in Ohio's Butler, Warren, Preble and Clinton Counties. (*Id.*, Tr. 842). After reviewing petitioner's history and interviewing petitioner, Dr. Fisher was willing to testify at trial in support of the NGRI defense–i.e., that at the time of the offense, petitioner was suffering from a psychotic disorder which impacted his "ability to perceive reality, to deal with reality, in an appropriate way," and "made it very difficult for [him] to comprehend . . . what he was doing and that what he had done was wrong." (*See id.*, Tr. 853-61).

Moreover, it was reasonable for counsel to present a case supporting the self-defense theory, given that petitioner himself first asserted in statements to the police after his arrest that his uncle was the aggressor and he had merely acted in self-defense. (*See id.*, Tr. 439, 563). Petitioner maintained this position throughout his various psychiatric consultations and at trial.

Specifically, according to petitioner, Boo initiated the altercation when he was unable to enter their locked house, which had been secured by the landlord, and began demanding the key from petitioner. Petitioner testified that Boo went after him, kicking and hitting him, as well as yanking some dreadlocks out of his head, as petitioner tried to walk away from Boo into an alley. Only when Boo tripped him to the ground and continued punching and stomping on him, did petitioner pull scissors from his pocket, which he used to "poke[]" at Boo "three to five times." (*Id.*, Tr. 767-70). According to petitioner, Boo eventually stopped attacking him in the alley and walked back toward the house. Petitioner remained in the alley for a few minutes, but then also returned to the

house to retrieve his "i.d.," which he needed to enter a homeless shelter. When he tried to pass by Boo, who was at that point lying on the ground, Boo grabbed his leg. Petitioner then hit Boo with a shovel, killing him. (*Id.,* Tr. 771-72).

Defense counsel provided reasonable assistance in presenting in the most favorable light possible the self-defense theory that petitioner himself had raised in his statements to the police. In closing argument, counsel emphasized the first portion of the altercation, in light of corroborating evidence that supported petitioner's version of events, including testimony from witnesses regarding Boo's mistreatment of petitioner and petitioner's fear of Boo and evidence indicating that three dreadlocks found in petitioner's pocket had been "forcibly removed" from petitioner's head. (*See id.,* Tr. 539, 987-92). Counsel also de-emphasized the second portion of the altercation, where the self-defense theory was weakest given Boo's own injuries at that point, which ultimately proved fatal. (*See id.,* Tr. 993-94). Counsel, however, made the most persuasive argument possible, which was that petitioner was a "victim" who was terrified of Boo and that petitioner was "[d]efinitely provoked by Boo," who grabbed petitioner "around the leg" and said, "I'll kick your ass fag–you big fag," as petitioner attempted to go around him to get into the house to retrieve his "i.d." (*Id.*).

In any event, even assuming, *arguendo,* that counsel's conduct in presenting and arguing the defenses of NGRI and self-defense at trial somehow fell outside the wide range of reasonable professional assistance under the first prong of the *Strickland* test, petitioner has not demonstrated that the trial's outcome would "reasonably likely have been different absent the errors." *See Strickland,* 466 U.S. at 695.

Finally, the record belies any claim by petitioner that defense counsel failed to engage in any plea bargaining as requested by him and instead induced him to enter a "not guilty" plea and to proceed to trial on the NGRI and self-defense theories. It appears from the record that petitioner was informed by his counsel of a plea offer extended by the State, which provided petitioner with the opportunity to plead guilty to a lesser offense of voluntary or involuntary manslaughter. (*See* Doc. 45, Ex. D; *see also* Doc. 1, p. 5, attached pp. IV-V).[12] It thus appears that counsel did engage in plea negotiations

---

[12]Contrary to petitioner's claim that this plea offer included an agreement to a five (5) to eight (8) year sentence, John James McCracken, the assistant prosecuting attorney, has averred that "at no time did the plea bargain offer . . . contain, refer, mention, contemplate, or propose, in any manner, any range of years for sentencing purposes." (Doc. 45, Ex. D). McCracken has averred further: "In particular, the plea bargain never contained or proposed that Mr. Sudberry plead guilty to a lesser offense in exchange for a sentence of 5 to 8 years imprisonment. A term

16

and in fact presented an offer to petitioner prior to trial. Therefore, as discussed below, the only ineffective assistance of counsel claim of potential merit alleged in the petition stems from petitioner's allegations in Ground "(D)" that his trial attorney never gave him the opportunity to respond to the prosecutor's plea offer, which petitioner was told had to be accepted before the first day of trial. (*See* Doc. 1, p. 5, attached pp. IV-V).

### C. An Evidentiary Hearing Should Be Held On Petitioner's Remaining Claim Stemming From His Trial Counsel's Alleged Failure To "Follow Up" With Him In Responding To The Prosecutor's Plea Offer

In his remaining claim challenging his trial counsel's performance, petitioner alleges that defense counsel failed to "follow through" to obtain his response to a plea bargain offered by the State five days prior to trial. As discussed *infra* pp. 17-22, it appears that an evidentiary hearing is required to develop the facts underlying this claim before the Court can determine whether or not it has merit.

As an initial matter, the Court must determine whether the statutory provision governing evidentiary hearings, which is embodied in 28 U.S.C. § 2254(e)(2), applies to these claims. Under that provision,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the [United States] Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact

---

of 5 to 8 years imprisonment for Mr. Sudberry was never contemplated by my office." (*Id.*).

finder would have found the applicant guilty of the underlying offense.

In *Williams v. Taylor,* 529 U.S. 420, 432 (2000), the Supreme Court held that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." In so ruling, the Court observed that the "opening clause of § 2254(e)(2) codifies the threshold standard of diligence" previously established by the Supreme Court in *Keeney v. Tamayo-Reyes,* 504 U.S. 1 (1992), applicable to "prisoners who are at fault for the deficiency in the state-court record [to] ... satisfy a heightened standard to obtain an evidentiary hearing." *Williams,* 529 U.S. at 433-34.

Diligence within the meaning of the "opening clause" of § 2254(e)(2) "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Williams,* 529 U.S. at 435; *cf. Satterlee v. Wolfenbarger,* 374 F.Supp.2d 562 (E.D. Mich. 2005), *aff'd & remanded on other grounds,* 453 F.3d 362 (6th Cir. 2006), *cert. denied,* 127 S.Ct. 1832 (2007). Therefore, a petitioner who was diligent in seeking a state evidentiary hearing, but whose requests were denied in the state courts, has not failed to develop the facts underlying his claim, and "will be excused from showing compliance with the balance of [§ 2254(e)(2)'s] requirements." *Williams,* 529 U.S. at 437; *see also McFarland v. Yukins,* 356 F.3d 688, 712 (6th Cir. 2004); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002).

Here, the question is close, because petitioner did not attempt to develop the facts underlying his remaining ineffective assistance of counsel claim in the state courts before filing the instant petition, wherein he raised the claim for the first time. Nevertheless, the Court is reluctant to find that petitioner lacked diligence in seeking to develop the facts underlying this claim, because the instant petition was timely filed and because petitioner may not have been aware he could seek state post-conviction relief with respect to his ineffective assistance of trial counsel claims until the undersigned issued the February 20, 2004 Report and Recommendation recommending that the case be stayed so that petitioner could exhaust the possibly available state post-conviction remedy to the extent such claims "may be based on evidence outside the record" (*see* Doc. 8). *Cf. McFarland,*

356 F.3d at 712; *Greer,* 264 F.3d at 681.[13]  On April 19, 2004, before the Report and Recommendation was even adopted as an Order, petitioner filed a petition for state post-conviction relief in accordance with the undersigned's decision.  The exhaustion requirement was excused nearly three years thereafter in January 2007, not as a result of any lack of diligence on petitioner's part but because the trial court had delayed too long in ruling on the post-conviction petition.  Therefore, out of an abundance of caution, the Court concludes that the heightened standard set forth in 28 U.S.C. § 2254(e)(2) should not apply here.

The district court has the discretion and "inherent authority" in habeas cases "to order evidentiary hearings to settle disputed issues of material fact." *Sawyer v. Hofbauer,* 299 F.3d 605, 609-10 (6th Cir. 2002) (quoting *Abdur'Rahman v. Bell,* 226 F.3d 696, 706 (6th Cir. 2000), *cert. denied,* 534 U.S. 970 (2001)).[14]  Because § 2254(e)(2) does not apply here, petitioner is entitled to such a hearing if it is determined that he has alleged "sufficient grounds for release, [the] relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing" on his claims.  *Id.* at 610-11 (quoting *Stanford v. Parker,* 266 F.3d 442, 459 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002)).

First, in this case, petitioner was not afforded a full and fair evidentiary hearing on his ineffective assistance of counsel claims in the state courts.  Indeed, although the exhaustion requirement has been waived, petitioner's state post-conviction petition was eventually rejected without a hearing on procedural timeliness grounds.

Second, the undersigned concludes that petitioner has alleged facts, which if true, could entitle him to habeas relief.

As discussed above, *see supra* p. 13, to establish a colorable ineffective assistance of counsel claim, the prisoner must allege facts showing: (1) his trial counsel made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth

---

[13]*See also Hall v. Russell,* No. 1:02-CV-34, 2006 WL 1982856, at *3 (S.D. Ohio July 13, 2006) (unpublished) (Spiegel, S.J.) (remanding for evidentiary hearing on claim that the "government withheld evidence in [petitioner's] favor, and destroyed such evidence," after finding that petitioner did "not fall within [§] 2254(e)(2)'s opening clause" because he was not at "fault" in failing to develop the facts underlying such claim in the state courts).

[14]*See also Harries v. Bell,* 417 F.3d 631, 635 (6th Cir. 2005) (quoting *Abdur'Rahman,* 226 F.3d at 705) ("a district court does have the inherent authority to order an evidentiary hearing even if the factors requiring an evidentiary hearing are absent").

Amendment; and (2) counsel's deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *See id.*

Under the second "prejudice" prong of the *Strickland* test, petitioner satisfies his burden of proof with respect to his claim challenging his counsel's pretrial conduct in failing to follow up with him in responding to the State's plea offer, by showing that such conduct had a prejudicial effect on "the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (applying *Strickland* to guilty plea context). This means that in order to demonstrate prejudice based on such claim, petitioner must show a reasonable probability exists that, but for counsel's alleged error, he would have accepted the State's plea offer and would not have proceeded to trial. *Cf. id.; see also Griffin v. United States,* 330 F.3d 733, 737 (6th Cir. 2003) ("The second element of the *Strickland* test in the plea offer context is that there is a reasonable probability the petitioner would have pleaded guilty given competent advice.").

There is evidence in the record supporting petitioner's claim that his defense counsel's representation may have fallen below an objective standard of reasonableness under the first prong of the *Strickland* standard. Evidence has been submitted by respondent indicating that prior to trial, the State did offer petitioner the opportunity to plead guilty to the lesser offense of voluntary or involuntary manslaughter, which defense counsel rejected. (*See* Doc. 45, Ex. D).

Petitioner's trial attorney was Ronald Morgan, who recently was suspended from the practice of law in Ohio "for two years with one year stayed on conditions, based on findings that [he] commingled clients' funds with his own and failed to cooperate in the investigation of his misconduct." *See Disciplinary Counsel v. Morgan,* 870 N.E.2d 1171 (Ohio 2007). Although petitioner's trial attorney was ordered in this case to "submit an affidavit . . . responding to petitioner's allegations regarding his purported failure to 'follow through' [with petitioner] on the prosecutor's [plea] offer" (Doc. 42, p. 3), respondent states in the supplemental return of writ filed June 14, 2007 that Mr. Morgan cannot be located. (Doc. 45, Brief, pp. 4-5). Therefore, no affidavit by petitioner's trial

counsel or any other evidence has been submitted by respondent to refute petitioner's allegations that his counsel never followed up with him to receive his response to the State's plea offer.[15]

It is well-established that a criminal defendant has the right to effective assistance of counsel in deciding whether to reject or accept a proposed plea agreement. *See, e.g., Turner v. Tennessee,* 858 F.2d 1201, 1205 (6th Cir. 1988) (and cases cited therein), *judgment vacated on other grounds,* 492 U.S. 902 (1989); *cf. Griffin,* 330 F.3d at 737 & n.2 (and numerous cases cited therein) (involving claim that counsel failed to inform the defendant of a plea offer); *Smith v. United States,* 348 F.3d 545, 552-53 (6th Cir. 2003). Certainly, in this context, counsel's conduct would have fallen outside the wide range of reasonable professional assistance under the first prong of the *Strickland* test if, as petitioner has alleged, counsel never checked back with petitioner for his response after relaying the State's plea offer to him, but instead rejected the offer without first obtaining petitioner's permission to do so.

With respect to the "prejudice" component of the *Strickland* test, the undersigned further finds that there is sufficient evidence of prejudice to raise a colorable claim of prejudice which needs to be explored more fully in an evidentiary hearing.

Specifically, petitioner has alleged that he would have accepted the State's plea offer if his counsel had checked back with him for his response to the offer before trial, as counsel promised he would do. The assistant prosecuting attorney has averred that, contrary to petitioner's contention, the plea offer did not include any agreement to a five (5) to eight (8) year sentence or any proposal regarding the term of imprisonment to be imposed in exchange for petitioner's guilty plea. (Doc. 45, Ex. D). However, it is clear from the record that the prosecutor did offer petitioner the opportunity to plead guilty to a lesser offense, which would have substantially reduced petitioner's potential sentence exposure. Indeed, one of the arguments asserted by defense counsel in closing argument was that petitioner had been "overcharged" and that "there's absolutely no doubt here that what we ought to be dealing with is the charge, at most, of voluntar[]y manslaughter." (*See* Doc. 37, Ex. 24, Tr. 987, 991-92).

---

[15]It is noted that petitioner did not mention at any point during the ensuing trial that he would have accepted the State's plea offer if his counsel had followed up with him, which tends to undermine his version of events. However, given petitioner's unstable mental condition and his assertion that he was told by counsel that the offer would expire if not accepted before the commencement of trial, the undersigned will not give dispositive weight to this one factor in respondent's favor at this juncture.

A criminal defendant's repeated declarations of innocence do not prove that he would not have accepted a prosecutor's plea offer, and therefore, are not dispositive in determining the "prejudice" issue. *Griffin*, 330 F.3d at 738 (citing *North Carolina v. Alford*, 400 U.S. 25, 33 (1970), which quoted as follows from a state supreme court case: "reasons other than the fact that he is guilty may induce a defendant to so plead, . . . and he must be permitted to judge for himself in this respect"); *see also Smith*, 348 F.3d at 551-52. Moreover, the disparity between the plea offer and the defendant's potential sentence exposure in proceeding to trial on all charges constitutes "strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence." *Smith*, 348 F.3d at 552 (and cases cited therein).

Therefore, in the absence of the development of a factual record on this issue, the Court is unable to determine whether or not petitioner can meet his burden of showing under the second prong of the *Strickland* test that it is reasonably likely he would have accepted the State's plea offer and would not have proceeded to trial if his counsel had followed up with him to obtain his response to that offer before the trial commenced.

In sum, the Court concludes that based on the present record, petitioner has raised a colorable claim that he was denied his Sixth Amendment right to the effective assistance of counsel because his trial attorney failed to obtain his response to a plea offer extended by the State five days before trial and, instead, apparently unilaterally rejected the offer without petitioner's permission. Because petitioner has not been provided a full and fair evidentiary hearing on this claim, the material facts have not been sufficiently developed for the Court to adequately assess the merits of the claim.

Accordingly, it is **RECOMMENDED** that the Court exercise its discretion to order that an evidentiary hearing be held, wherein the State and petitioner's trial counsel are provided the opportunity to present evidence responding to the one remaining ineffective assistance of trial counsel claim, which is alleged in Ground "(D)" of petitioner's habeas corpus petition (Doc. 1, p. 5, attached pp. IV-V). *See* Rule 8, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

## IT IS THEREFORE RECOMMENDED THAT:

1. All claims alleged in instant petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice, except for petitioner's claim alleged in

Ground "(D)" that he was denied the effective assistance of counsel in violation of the Sixth Amendment when his trial attorney failed to "follow through" with him in responding to a plea bargain offered by the prosecutor prior to trial (*see* Doc. 1, p. 5, attached pp. IV-V).

2. An order be issued remanding the matter for evidentiary hearing, as well as appointing counsel to represent petitioner at such hearing, before the undersigned magistrate judge on petitioner's remaining ineffective assistance of counsel claim.

3. A certificate of appealability should not issue with respect to the claims which this Court has concluded are waived, and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[16] A certificate of appealability also should not issue with respect to the ineffective assistance of counsel claims, which this Court has concluded should be denied as lacking in merit, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to appeal *in forma pauperis* based on the claims raised in the petition which the undersigned has recommended should be denied with prejudice, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting that portion of the Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 12/19/07

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2007 habeas orders\03-537pet-reopened.waiver-Bonilla-insanityeause.iac-pleaoffer-evidhrng.wpd

---

[16]Based on the finding that the first prong of the *Slack* standard has not been met in this case, the Court need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his waived claims for relief. *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

James D. Sudberry,
　　Petitioner,

　　　　　　　　　　　　　　　　　　　Case No. 1:03cv537
　　v.　　　　　　　　　　　　　　　　(Beckwith, C.J.; Hogan, M.J.)

Edwin C. Voorhies, Jr.,
　　Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable
Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus
action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's
Report and Recommendation within **fifteen (15) days** after the date the Report and
Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with
the Clerk of Court and serve on all other parties written objections to the Report and
Recommendation, specifically identifying the portion(s) of the proposed findings,
recommendations, or report objected to, together with a memorandum of law setting forth
the basis for such objection(s). Any response by an opposing party to the written
objections shall be filed within ten (10) days after the opposing party has been served
with the objections. A party's failure to make objections in accordance with the
procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas
v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Sudberry
#402-190
SOCF
PO Box 45699
Lucasville, OH 45699

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)     7007 1490 0001 0562 6578

PS Form 3811, August 2001     Domestic Return Receipt     102595-01-M-2509

1:03cv 537 (Doc. 52)